UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN E. BETTYS,

Plaintiff,

v.

KEVIN W. QUIGLEY, et al.,

Defendants.

CASE NO. 16-cv-5076-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: March 9, 2018

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4. This matter is before the Court on defendants' motion for summary judgment and is fully briefed. Dkt. 117.

Plaintiff is a civil detainee at the Washington State Special Commitment Center ("SCC"). Plaintiff initially filed a complaint for monetary damages and injunctive relief claiming, among other things, that he was not being afforded the same level of sexual

offender treatment programming ("S.O.T.P.") as prisoners incarcerated by the Department of Corrections ("DOC").

This Court previously recommended, and the District Court ordered, that the money damages claims against individual defendants be dismissed for several reasons, but that defendants' motion to dismiss be denied on the injunction claims. Dkt. 96, pages 9 – 11. The Court relied on the *Ex Parte Young* doctrine and concluded that plaintiff could pursue claims involving injunctive relief against defendants in their official capacity to the extent that plaintiff is seeking relief to remedy "an ongoing violation of federal law and seeks relief properly characterized as prospective." *See id.; see also* Dkt. 90, at 27-28 (citations omitted). As noted by the District Court:

> Two rules undergird this conclusion: (1) "the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," *Sharp v. Weston*, 233 F.3d at 1172, and (2) "an individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime," *Jones*, 393 F.3d at 932.

Dkt. 96 at 10.

Therefore, the Court allowed the lawsuit to proceed on a go-forward basis.

Apparently, since this lawsuit was filed, there have been some significant changes at the SCC. *See* Defendants' Motion, Dkt. 117, p. 13. According to an October, 2017 report from an external group of professional clinicians, (the Inspection of Care Committee ("IOC")), the clinical program at the SCC "has filled staff vacancies, staff caseload sizes have become appropriate, and the program has increased the number of

REPORT AND RECOMMENDATION - 2

clinical treatment hours provided to each treatment consenting resident." Lopez

Declaration, Dkt. 121, Attachment G, IOC report, p. 100 – 101. The IOC report indicates

that "during the last year, the [SCC] program has made a concerted effort to address what

has been a relatively chronic vacancy rate problem within the clinical services

department." *Id*. at 100. The IOC report also revealed that the five hours of foundation

group hours per week that SCC residents were receiving as of October, 2017 "is an

approximately twofold increase in the minimum number of treatment hours provided

residents since the time of the last IOC review [in September, 2016]." *Id*. at 101. Plaintiff

has not disputed any of this evidence.

Plaintiff recently indicated that this case "is not about the monetary gain that

might be available to [him]," but is about obtaining "adequate sex offender treatment as

required by law." Dkt. 111. Plaintiff has presented no evidence to raise a significant issue

of fact that the sex offender treatment he is currently receiving is inadequate.

Although there may be a slight difference in the number of core SOTP treatment

hours per week he is receiving, in comparison to SOTP treatment hours available to

inmates at the DOC, this is only one factor the Court considers in determining if the

treatment is inadequate. Importantly, the Court must consider whether defendants

exercised professional judgment when establishing a treatment program and whether that

program is a substantial departure from accepted professional practice. As discussed

herein, the Court concludes that they did exercise such judgment.

For these reasons, and because there remains no issue of material fact, the Court

recommends that defendants' motion for summary judgment be granted.

REPORT AND RECOMMENDATION - 3

## BACKGROUND and PROCEDURAL HISTORY

Plaintiff, JOHN E. BETTYS, proceeding *pro se* and *in forma pauperis,* Dkt. 12*,* alleges, among other alleged deficient conditions, that he receives less SOTP treatment while he is being civilly detained than is provided to prisoners. Second Amended Civil Rights Complaint, Dkt. 82. On April 4, 2017, in the Order adopting and supplementing the R&R on defendants' motion to dismiss, the Court dismissed all "claims except those relating to conditions of confinement." *See* Dkt. 96, p. 10; *see also* p. 11.

Defendants served plaintiff with a *Rand* notice and copies of the motion for summary judgment and supporting documentation on November 20, 2017. *See* Dkts. 117, 118. Plaintiff filed a response to defendants' motion for summary judgment on December 13, 2017. Dkt. 129. Defendants filed their reply on January 5, 2018. Dkt. 135.

Plaintiff's complaint was signed under penalty of perjury and is being considered as evidence. Dkt. 82, p. 41. Because plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## FACTS

Plaintiff is a non-prisoner, pre-trial civil detainee, awaiting commitment proceedings regarding potential Sexual Violent Predator ("SVP") status, currently detained at the Special Commitment Center ("SCC") at McNeil Island in Pierce County,

1    Washington. Second Amended Complaint, Dkt. 82, ¶ 1.1. In addition to his allegations

2    regarding insufficient SOTP treatment, plaintiff also presents multiple various other types

3    of allegedly of deficient conditions of confinement. *See, e.g.,* Dkt. 82 at ¶ 4.17; *see*

4    *generally, id.* at ¶¶ 4.3-4.20. Plaintiff complains that this violates his Fourteenth

5    Amendment right to more considerate treatment and less restrictive conditions of

6    confinement than provided criminal counterparts, and also notes that his "present liberty is

7    by statute directly dependent on [his] completion of core SOTP at SCC presently." *Id.*

8    These allegations are pled in support of his allegation that he is being deprived of sufficient

9    mental health treatment to allow for a realistic opportunity to be cured and released.

10

11                        **STANDARD OF REVIEW**

12           The purpose of summary judgment is to avoid unnecessary trials when there is no

13    dispute over the material facts before the court and the moving party is entitled to

14    judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975),

15    *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir.

16    1990). The moving party is entitled to summary judgment if the evidence produced by

17    the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

18    251 (1986). To determine if summary judgment is appropriate, the court must consider

19    whether particular facts are material and whether there is a genuine dispute as to the

20    material facts left to be resolved. Fed. R. Civ. P. 56(c). The materiality of a given fact is

21    determined by the required elements of the substantive law under which the claims are

22    brought. *Anderson*, 477 U.S. at 248. Where there is a complete failure of proof

23    concerning an essential element of the non-moving party's case on which the nonmoving

24

1    party has the burden of proof, all other facts are rendered immaterial, and the moving

2    party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

3    323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented

4    through the prism of the substantive evidentiary burden"). However, when presented with

5    a motion for summary judgment, the court shall review the pleadings and evidence in the

6    light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation

7    omitted), and "a pro se complaint will be liberally construed  . . . ." *Pena v. Gardner,*

8    976 F.2d 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976))

9    (other citation omitted).

10         Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party

11    opposing the motion must do more than simply show that there is some metaphysical

12    doubt as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574,

13    586 (1986).  The opposing party cannot rest solely on his pleadings but must produce

14    significant, probative evidence in the form of affidavits, and/or admissible discovery

15    material that would allow a reasonable jury to find in his favor.  *Id.* at n.11; *Anderson*,

16    477 U.S. at 249-50. In other words, the purpose of summary judgment "is not to replace

17    conclusory allegations of the complaint or answer with conclusory allegations of an

18    affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However,

19    weighing of evidence and drawing legitimate inferences from facts are jury functions,

20    and not the function of the court.  *See United Steel Workers of America v. Phelps Dodge*

21    *Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

**DISCUSSION**

In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

As noted, the Court dismissed all "claims except those relating to conditions of confinement . . . ." Dkt. 96, p. 10; *see also* pp. 11-12.

Because plaintiff is a civil detainee, his claims are properly brought as a violation of his Fourteenth Amendment substantive due process rights. *See Youngberg v. Romeo*, 457 U.S. 307, 315 (1982) (*quoting Ingraham v. Wright*, 430 U.S. 651, 673 (1977)). As noted by the Ninth Circuit, civil detainees must be provided more than the "minimal civilized measure of life's necessities," and "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). The court noted that "persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* (quoting *Youngberg*, 457 U.S. at 321-22). The Court also noted that an "individual detained under civil process -- like an individual accused but not convicted of a crime -- cannot be subjected to

REPORT AND RECOMMENDATION - 7

1    conditions that 'amount to punishment.'" *Id.* at 932 (quoting *Bell v. Wolfish*, 441 U.S.

2    520, 536 (1979)).

3         In the Order adopting and supplementing the R&R on the motion to dismiss in this

4    case, the Court noted that the Ninth Circuit's "discussion of the law explicitly suggests

5    that comparison [of conditions of confinement] may be a means of parsing out whether a

6    civilly detained person is being subjected to punishment." Dkt. 96, p. 4 (quoting *id.*).

7    However, in a similar case, the Court also noted that the relevant substantive Due Process

8    standard originates in *Youngberg*, and "includes – but requires more than – such a

9    comparison." *Donaghe v. Lashway*, 2017 U.S. Dist. LEXIS 172573 at * 6, Case No. 16-

10   cv-5973-RJB-JRC, Dkt. 52, p. 5 (W.D. Wash. October 18, 2017) (unpublished opinion)

11   (citing *Youngberg*, 457 U.S. at 321-22).

12         When determining whether a substantive right has been violated, the Supreme

13   Court noted that "it is necessary to balance the liberty of the individual and the demands

14   of an organized society." *Youngberg*, 457 U.S. at 320 (citation and internal quotation

15   marks omitted). "Persons who have been involuntarily committed are entitled to more

16   considerate treatment and conditions of confinement than criminals  . . . ." *Id*. at 322.

17   However, "[i]f there is to be any uniformity in protecting these interests, this balancing

18   cannot be left to the unguided discretion of a judge or jury." *Id*. at 321. To reach the

19   proper balance, "the Constitution only requires that the courts make certain that

20   professional judgment in fact was exercised" in caring for the civilly committed person.

21   *Id*. at 322. Decisions, "if made by a professional, [are] presumptively valid," and

REPORT AND RECOMMENDATION - 8

"liability may be imposed only when the decision by the professional is [] a substantial

departure from accepted professional judgment, practice, or standards  . . . ." *Id.* at 323.

### 1. Plaintiff's request to voluntarily withdraw various claims and specific allegedly deficient conditions of confinement under Fed. R. Civ. P. 41

Plaintiff made a number of requests in his response to the Motion for Summary

Judgment to withdraw specific claims or conditions of confinement. *See, e.g.*, Dkt. 129,

pp. 26-27 (citing Fed. R. Civ. P. 41). For example, plaintiff concedes that the "SCC

defendants, in response to this lawsuit, are providing proper vendor access;" that since

"hiring Dr. John Hamill at the SCC facility in early 2016, the SCC has obtained several

psychiatric care providers;" and that, because the doctrine of standing does require

property seized from plaintiff, "until such time as the SCC staff does create standing by

taking possession of [plaintiff's] personal property under policy-212 in the future,"

plaintiff's claim should be withdrawn. *Id.* at 31 (citing Fed. R. Civ. P. 41); *see also id.* at

3, 18-19, 24 (accessed the psychiatric and medical care claims), 26-27. To the extent they

have not already been dismissed, plaintiff's various requests to withdraw claims should

be granted. *See* Fed. R. Civ. P. 41(a)(2).

### 2. SOTP hours and treatment

As noted previously, there have been some relevant changes at the SCC since the

onset of this case. *See* Defendants' Motion, Dkt. 117, p. 13 ("the Inspection of Care

Committee ("IOC") acknowledged a number of positive improvements that have been

made during the last year"). As noted, it appears that plaintiff's previous claim that he

was receiving "merely eight to fifteen hours of core SOTP each month while criminal

counterparts are provided twenty-nine hours or more of core SOTP each month in the WDOC" (Dkt. 82 at ¶ 4.2) is no longer the case.

For example, although for one particular type of SOTP treatment ("core group sessions"), SCC detainees receive five hours per week, while DOC inmates receive six hours per week, in general, individuals at SCC receive more SOTP treatment hours than inmates at DOC when other types of therapeutic treatment hours are included, such as responsivity group sessions, transition treatment and life skills classes. *See, e.g.*, Dkt. 121, ¶ 23. While it does appear that there is a difference between the amount of hours for one specific type of program, the difference is not as severe as alleged in the complaint, albeit perhaps because defendants have altered the treatment protocol in response to the complaint. *See* Second Amended Complaint, Dkt. 82, ¶ 4.2; Plaintiff's Response, Dkt. 129, p. 14. Furthermore, such bare allegations neglect to acknowledge the context whereby the SCC (at least currently) provides "a minimum of five hours of core group treatment per week, up to eight hours of additional adjunct groups, one hour of individual therapy, and a therapeutic milieu." Dkt. 117, p. 18 (citing Lopez Declaration, Dkt. 121, ¶¶ 21-23). This is in contrast to the program currently offered in the Washington Department of Corrections ("WDOC"), which appears to include six hours a week of group treatment, a "few additional hours in adjunct groups, one hour per month individual therapy or case management and little to no integration between sex offender treatment and other care  .  .  .  ." *Id*. at pp. 3-4, n.1 (citing McNally Declaration, Dkt. 122, ¶¶ 4-9). The Court also finds persuasive defendants' comparison of some relevant

1    conditions. *See, e.g.*, Dkt. 117, pp. 18-21 (*e.g.*, chart, survey and comparison).  Plaintiff

2    has not disputed any of this evidence.

3        Even if the one hour of difference in the number of core SOTP treatment hours per

4    week alone is constitutionally significant despite the multiple other therapeutic hours

5    offered, such is only one factor the Court should consider. Importantly, the Court must

6    also consider whether defendants exercised professional judgment when establishing a

7    treatment program provided to plaintiff that was not a substantial departure from accepted

8    professional practice. As discussed herein, the Court concludes that they did.

9        For example, as summarized by defendants in their reply, in "the declarations of

10   former Chief of Resident Treatment Dr. Holley Coryell (Dkt. 119) and current Chief of

11   Residence Treatment Dr. Elena Lopez (Dkt. 121), both opined that SCC's current mental

12   health treatment program and its delivery are products of professional judgment." Dkt.

13   135, pp. 2-3 (citing Dkt. 121, ¶¶ 42, 45; Dkt. 119, ¶ 19). Plaintiff actually does not

14   consistently dispute this, but instead, argues that even if the treatment program is the

15   product of professional judgment, this, alone, does not save defendants from liability. *See*

16   Plaintiff's Response, Dkt. 129, p. 4 ("civil conditions of confinement that are the product

17   of 'professional judgment' may still result in the unconstitutional forbidden 'punishment'

18   of SVP confined individual"); *see also* p. 3 (the evidence demonstrates that the SCC

19   treatment had "bare minimal compliance in 2017 to allow [plaintiff's] pending lawsuit to

20   be dismissed"). However, plaintiff's argument is contrary to Supreme Court case law,

21   which indicates that decisions, "if made by a professional, [are] presumptively valid,"

22   and "liability may be imposed only when the decision by the professional is [] a

1  substantial departure from accepted professional judgment, practice, or standards . . . ."

2  *Youngberg*, 457 U.S. at 323. Contrary to plaintiff's argument, defendants' alleged failure

3  to provide three or four fewer hours per month of core SOTP treatment than the DOC

4  facilities does not prove that they are punishing him. Defendants have set forth evidence

5  that the amount of core SOTP treatment hours plaintiff receives, as well as the rest of the

6  treatment conditions, and other conditions of confinement at the SCC about which

7  plaintiff complains, have been rendered as a result of a professional judgment and are not

8  substantially different from standard practices.  Plaintiff has not presented evidence to put

9  that issue in dispute.

10        At one point in his brief, plaintiff offers a broad conclusion that the treatment plan

11  was not the result of professional judgment; however plaintiff does not offer any

12  evidence on this point to rebut that provided by defendants. *See* Dkt. 129, p. 6. The Court

13  also notes that defendants offered additional evidence to support their conclusion that

14  they used professional judgment to make their decisions and that the resultant treatment

15  program is not a substantial departure from professional norms. *See, e.g.,* Dkt. 135, p. 3

16  (citing Dkts. 120, 121-7, 122, 123). For example, as noted by defendants:

> Both Drs. Lopez and Coryell explain how the SCC's treatment program
> is based on research driven models and detail how it is designed to target
> residents' individual dynamic risk factors, teach appropriate skills and
> coping mechanisms, reduce harmful and maladaptive behavior while
> increasing positive adaptive behavior, lower the residents' risk of re-
> offense, and increased likelihood of success upon transition into the
> community.
>
> Both doctors explain how the SCC's program is consistent with
> evidence-based practices in the field and the Practice Standards and

REPORT AND RECOMMENDATION - 12

Guidelines set forth by the Association for the Treatment of Sexual
Abusers (ATSA).

Dkt. 117, p. 11 (citing Dr. Lopez Declaration, Dkt. 121, ¶¶ 1-27; Dr. Coryell Declaration,
Dkt. 119, ¶¶ 1-20).

Similarly, plaintiff contends that certain treatment conditions are required, such as
more hours in core treatment groups (*see* Dkt. 129, p. 8); he also contends that rotating
therapists is unacceptable and that adequate treatment requires a consistent therapist (*id.*
at 9); and finally, he contends that "holding of a degree as a mere psychologist does not
actually qualify anyone in society in the State of Washington to practice the 'profession'
of 'Sexual Offender Treatment Provider' under the terms of Washington's statutory law"
(*id.* at 10-11 (citations omitted)). However, plaintiff has not offered any evidence that
failing to meet these requests or conditions is not the result of a professional judgment
and does not appear to be able to demonstrate that they entail a substantial departure from
professional judgment. These generalized conclusions are insufficient to create an issue
of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 n.11
(1986).

For example, plaintiff contends that defendants Drs. Coryell and Lopez are not
qualified to make "professional judgments" regarding the treatment at SCC even though
they both are licensed psychologists, because they allegedly do not have specialized
certifications in sexual offender treatment. *See id.* at 11. However, plaintiff's citations do
not demonstrate that specialized certification is required for the job responsibilities
performed by these two psychologists, nor that specialized certification is required in

order to provide professional judgments regarding the standard of care to be provided, or regarding the standards, practices, or norms of the profession.

Plaintiff also presents evidence about what conditions were in the past, but, as plaintiff's "request for damages [] [was] dismissed without prejudice as to all individually named defendants," it is unclear the import of these arguments. *See* Dkt. 96, p. 10. Plaintiff is making a claim for injunctive relief.  Therefore, what occurred in the past is only marginally relevant and does not demonstrate "an ongoing violation of federal law." Dkt. 90, p. 28; *see also* Dkt. 96 (Order Adopting and Supplementing R&R). As noted previously, when allowing this case to proceed on a move-forward basis on plaintiff's claim for an injunction, the Court relied on the *Ex Parte Young Doctrine* to avoid sovereign immunity for claims involving injunctive relief against defendants in their official capacity to the extent that plaintiff is seeking relief to remedy "an ongoing violation of federal law and seeks relief properly characterized as prospective." Dkt. 90, at 27-28 (quoting *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298-99 (1997)). Without being able to demonstrate any "an ongoing violation of federal law," plaintiff cannot demonstrate that this Court can provide him with any remedy. *See id.*; *Verizon Md. Inc.*, 535 U.S. at 645; *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 296, 298-99.

Since plaintiff's claims for past damages have been dismissed and plaintiff is proceeding only on the claim for injunctive relief, what occurred in the past is no longer relevant.  It is what is happening now that determines whether any claim for injunctive relief should proceed.

According to Supreme Court precedent, defendants are granted relief from liability when they utilize professional judgment, if there is not a substantial departure from professional norms. *See Youngberg*, 457 U.S. at 323

Even if any presumption of punishment were to be applied, the SCC has rebutted this presumption by explaining that there are legitimate, non-punitive purposes that justify the various conditions, including recreational items/activities discussed further below, noting the legitimate interests in "maintaining the security of the facility, effectively managing resources, and maintaining a therapeutic environment.". *See* Dkt. 117, p. 39 (citing *Jones*, 393 F.3d at 934) (citing *Bell*, 441 U.S. at 539).

Plaintiff's complaint also implicates the constitutional requirement that plaintiff have access to mental health treatment that gives him a realistic opportunity to be cured and released.

Extending confinement after a criminal term has been fulfilled on the basis of mental illness results in a due process requirement to provide "such individual treatment as will give [the mentally ill individual] a realistic opportunity to be cured or improve his or her mental condition . . . . because absent treatment, [such individuals] could be held indefinitely as a result of their mental illness . . . ." *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980) (quoting *Wyatt v. Stickney*, 325 F. Supp. 781, 784 (M.D. Ala. 1971) and 344 F.Supp. 373 (1972) aff'd sub nom., *Wyatt v. Aderbolt*, 503 F.2d 1305 (5th Cir. 1974) (other citation omitted); *see also Sharp v. Weston*, 233 F.3d 1162, 1172 (9th Cir. 2000) (citing *Ohlinger*, 652 F.2d at 778)) (in "*Ohlinger,* we held that the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons

1   with access to mental health treatment that gives them a realistic opportunity to be cured

2   and released").

3         As discussed above, the mental health SOTP treatment program available to

4   plaintiff at the SCC appears to have changed dramatically in the last year, with, for

5   example, the amount of weekly hours of core group session doubling. *See* Dkt. 121, p.

6   100 ("treatment consenting residents now receive a foundation of two 2.5-hour cohort

7   groups per week and initially one of individual therapy or case management services per

8   month, for a total minimum of approximately 5.25 treatment hours per week, [] [] an

9   approximately two-fold increase in the minimum number of treatment hours provided

10  residents since the time of the last IOC review" one year prior).

11

12        Furthermore, as summarized by defendants in their reply, "the declarations of

13  former Chief of Resident Treatment Dr. Holley Coryell (Dkt. 119) and current Chief of

14  Residence Treatment Dr. Elena Lopez (Dkt. 121) both . . . conclude that the SCC

15  treatment program offers [plaintiff] a reasonable opportunity to improve the mental

16  conditions for which he is confined." Dkt. 135, pp. 2-3 (citing Dkt. 121, ¶ 44; Dkt. 119, ¶

17  20). Plaintiff has not offered any opinion to rebut these opinions. *See* Fed. R. Evid. 701.

18        In addition, defendants cite the IOC report and note that as of September, 2017,

19  "72 residents had been unconditionally released from the program," with approximately

20  10 being unconditionally released in the previous year, contending that these "numbers

21  alone indicate that SCC's treatment passes constitutional muster." Dkt. 117, pp. 14-15

22  (citing Dkt. 121, pp. 99). Although the Court does not necessarily adopt this latter

23  statement, such data support defendants' conclusions. *See* Dkt. 121, ¶ 44; Dkt. 119, ¶ 20.

24

Plaintiff has not submitted any evidence that would permit any other conclusion other than that the treatment program is one established by professional judgment, that is not a substantial departure from accepted professional practices or standards, and that offers plaintiff a reasonable opportunity to be cured and released. *See Anderson,* 477 U.S. at 251.

### 3.  Other conditions of confinement

#### a.  TV channels

Plaintiff complains about his restriction from accessing television programming rated "TV-14 Mature or higher," contending that there is a lack of a therapeutic need for this restriction. Dkt. 82, ¶ 4.4. Defendants contend that plaintiff "does not dispute the fact that the SCC's television programming is a product of professional judgment, part of the therapeutic framework designed by the SCC clinicians and intended to maintain a safe therapeutic environment for all residents." Dkt. 135, p. 2 (citations omitted). Defendants further contend that, instead, plaintiff "asserts that none of that matters, because in the end, the record shows that SCC only provides 43 channels while DOC facilities provide inmates with 65-70 channels," thus claiming that a single, "isolated comparison alone makes the SCC's television access 'punitive' in violation of the Constitution." *Id*. Defendants argue that plaintiff's argument regarding what the Constitution requires is not persuasive. The Court agrees. The Court also finds persuasive defendants' argument that the clinical "staff at the SCC opined that limiting cable channels is necessary to maintain a therapeutic environment and that clinical judgment was employed in making

determinations regarding the programming available to residents." Dkt. 117, p. 32 (citing Dr. Coryell Declaration ¶ 23).

Furthermore, even if the Court were to conclude that the denial of TV-14 Mature or higher television may be a substantial departure from professional standards, the Court has concluded in a similar case that "[q]ualified immunity should [] bar the claim for denied access to TV-14 Mature media brought on substantive Due Process grounds." *Donaghe*, 2017 U.S. Dist. LEXIS 172573 at * 10, Case No. 16-cv-5973-RJB-JRC, Dkt. 52, p. 7. The Court indicated that it "is aware of no clearly established constitutional right to TV-14 Mature content." *Id.* The Court also noted that plaintiff Donaghe had "provided no authority to the contrary." *Id.* at 10-11.

Similarly, here, plaintiff has not provided any authority demonstrating an established right to a particular number of TV channels, or particular television programming. As noted by the Court, the "general principle that conditions of confinement for civilly detained persons should be better than that for criminally incarcerated persons is not 'the appropriate level of specificity,' but rather, Plaintiff must establish a 'more particularized and hence more relevant' constitutional right." *Id.* (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (internal quotations and citations omitted). Therefore, even if plaintiff has demonstrated that he has a right to TV programming that he is not receiving at the SCC, qualified immunity bars any such claim. *See id.; see also Cousins*, 568 F.3d at 1070.

//

//

### b. Miscellaneous conditions of confinement

Plaintiff complains of particular amenities or services not provided to him by the SCC that Washington inmates can allegedly access, such as an alleged lack of horseshoe pits and outside handball courts, conjugal visits and overnight family visitations, Internet video visits and electronic mail (email), biometric communications access to communicate with SCC staff, J-pay music access and library access. *See, e.g.,* Dkt. 82, ¶ 4.14. Defendants contend that such "complaints do not rise to the level of constitutional significance," and even if they did, plaintiff "has ample access to recreation, communication, and visitation at the SCC, and the limitations he experiences are once again the product of professional judgment in administering a safe and therapeutic treatment facility." Dkt. No. 117, pp. 2, 34 ("the decision not to offer overnight family are conjugal visitation at the Total Confinement Center was a management decision made in conjunction with the clinical staff" (citing Talbot Declaration, Dkt. 123, ¶ 25)); *id.*, generally, at 30-35. Defendants contend that plaintiff cannot demonstrate that the conditions of which he complains "amount to a failure to exercise professional judgment," or entail "a substantial departure from accepted professional judgment." *Id.*, at 32.

In support of this contention, defendants enumerate some of the various activities and services provided to plaintiff and other SCC residents. *See id.* at 5. For example, defendants note various recreational activities and services provided, such as "an outdoor track, sports field with soccer goals, indoor recreation center with the gymnasium, woodshop, hobby shop, fitness centers, game room, and music room;" individual

activities, such as TV, movies, computers, and video games; educational opportunities; library services, vendor services, legal research services, and visitation and communications. *See id.*

In a parallel case, regarding similar allegations, the Court concluded that the "remaining conditions of confinement are enumerated like a holiday wish list, without broader context." *Donaghe*, 2017 U.S. Dist. LEXIS 172573 at *8, Case No. 16-cv-5973-RJB-JRC, Dkt. 52, p. 6. The Court concluded that a plaintiff cannot simply allege that he lacks, for example, a baseball field and equipment, unlike his criminal counterparts, but instead, the complaint needs to "allege a theory for how each named defendant's decision to deny plaintiff a baseball field and equipment substantially departed from professional judgment." *Id.* at *8-*9. The Court concluded that the "former without the latter is insufficient under *Youngberg*, and, as a practical matter, would render this Court the *de facto* micromanager of a governmental institution, which is to be avoided." *Id.* (citing *Youngberg*, 457 U.S. 307).

In this matter, plaintiff similarly has provided a wish list of desired activities or services, without explanation of how any particular specified defendant made a decision regarding these activities or services that "substantially departed from professional judgment." *See id.* at *8-*9.

As a final note, plaintiff obliquely refers to the Americans with Disabilities Act ("ADA"), but does not appear to contend that such claim is part of this action. *See* Dkt. 129, p. 15 ("defendants' claim that additional hours of treatment related classes are available at the SCC facility to [plaintiff] is without merit presently [as they] know

[plaintiff] requires special seating that will hold his 442 pound body in the treatment

rooms  ...  [And,] a reasonable ADA accommodation was denied by defendant

Lopez  ...”). Defendants argue that plaintiff "should not be allowed to add novel theories

of liability at this late stage in litigation, in response to summary judgment motion." Dkt.

135, p. 8 n.3.

Defendants’ argument is persuasive: they contend that plaintiff "should not be

allowed to effectively amend the underlying complaint for the inclusion of new claims,

when he failed to include the required elements in his pleading controlling this action."

*Id.* The Court also notes that plaintiff had the opportunity to his amend his complaint,

albeit for different reasons, and explicitly declined such opportunity. *See* Dkt. 111. The

Court recommends denial of any (implied or explicit) request that new claims or novel

theories based on facts not within the complaint be allowed to proceed at this point.

## CONCLUSION

The undersigned recommends that defendants’ motion for summary judgment

(Dkt. 117) be **granted;** plaintiff’s claims should be **dismissed without prejudice**. Dkt.

82.

To the extent that any claims survive, plaintiff’s various requests to withdraw

claims should be granted. *See* Fed. R. Civ. P. 41(a)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can

result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on March 9, 2018, as noted in the caption.

Dated this 22nd day of February, 2018.

J. Richard Creatura
United States Magistrate Judge